2020 IL App (1st) 162763-U

THIRD DIVISION
September 30, 2020

No. 1-16-2763

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CR 05688 |
| | ) | |
| JULIAN DAVIS, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Stanley J. Sacks, |
| | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Howse and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's order summarily dismissing defendant's postconviction petition is reversed where defendant stated an arguable claim of ineffective assistance of counsel.

¶ 2    Defendant Julian Davis appeals the first-stage dismissal of his *pro se* postconviction petition, arguing that the trial court erred in summarily dismissing his petition because he raised the gist of meritorious claims. Specifically, defendant contends that his petition set forth arguable claims of a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), where the State failed to disclose an agreement not to charge a witness in exchange for her trial testimony and ineffective

assistance of trial counsel for (1) failing to advise defendant of a plea offer from the State; (2) coercing defendant to waive his right to testify; (3) failing to investigate whether the State agreed not to charge a witness in exchange for her trial testimony; and (4) failing to present mitigating evidence during sentencing.

¶ 3     In April 2011, defendant and codefendant Anthony Rollins were indicted on multiple charges including attempted first degree murder, aggravated discharge of a firearm, armed habitual criminal, and unlawful use of a weapon by a felon arising from the shooting of a handgun at two police officers in an unmarked squad car on March 10, 2011.

¶ 4     The following is a summary of evidence presented at defendant's 2013 bench trial taken from our decision on defendant's direct appeal. He was tried jointly with Rollins.

> "Victoria Rojas testified that in the early morning hours of March 10, 2011, she drove to a bar at 46th and Washtenaw where she was introduced to defendant, who was called 'Looney,' and codefendant Rollins. After drinking several beers, she left the bar with defendant and Rollins and the three drove away in Rojas's Mercury Sable. Rollins was driving the Mercury, Rojas was in the front passenger seat, and defendant was in the back seat when the vehicle drove to the BZ gas station at 47th and Western Boulevard. Defendant climbed out of the car. Rojas heard gunshots 'kind of close' and saw defendant standing about 30 to 50 feet from the car. He had a gun and was pointing it at a car she described as a dark blue 'long Crown Victoria' that was traveling north on Western Boulevard. The Crown Victoria 'took the red light to escape the gunshots.' Other cars were on the street at that time. Rojas saw defendant run north across the street to a BP gas station. He was still holding the gun and pointing it to the north, down Western

2

Boulevard. Rollins drove Rojas's Mercury to the BP station where he and Rojas picked up defendant and drove northbound on Western Boulevard in the direction taken by the Crown Victoria. Rojas saw the Crown Victoria coming back toward them. The two cars 'were at a close range about to crash with each other' when someone in the Crown Victoria fired shots. The Mercury swerved and continued north on Western. Defendant threw his gun out of the car in the area of a Home Depot. The Mercury continued to 43rd Street, turned east, and crashed into a parked vehicle. Defendant and Rollins exited the car and ran away. Rojas, who had injured her knee in the crash, waited in the vehicle until police arrived.

Jose Pineda testified that he was sitting in his car at the BP gas station when he heard gunshots coming from behind him. He looked in his side-view mirror and saw defendant holding a gun and firing three or four shots. Then a car pulled up, and defendant climbed inside the car which drove north on Western Boulevard. A vehicle with police officers came southbound on Western from the opposite direction. As the car with the gunman and the car with the officers passed each other, Pineda heard more shooting. Then the police car made a U-turn and drove northbound after defendant's car.

Two video recordings, one from a Chicago Police Department POD camera near the BZ gas station and another from a stationery video camera mounted on the BP gas station, captured events described by Rojas and Pineda. DVDs containing excerpts from those videos were shown at trial and are part of the record on appeal; this court has viewed the videos. The POD camera was located on the southeast corner of Western Boulevard and 47th Street, apparently

3

mounted on a street light near the BZ gas station. The camera was constantly moving and recording, covering the area of the intersection in a 270-degree motion. At a moment when the POD camera faced north toward northbound Western, it recorded the Crown Victoria police car traveling north through the intersection. The video depicted the BP gas station across the street, in the upper right portion of the screen. At the bottom right corner of the screen, at the corner of the intersection and almost under the POD camera, the video shows an individual holding something in his hand and pointing it at the receding police car while he was slowly backing up.

The BP gas station stationary camera's video showed the same individual running from the direction of the BZ gas station past the BP gas station pumps. That man holds a firearm in his hands in front of him and shoots northward in the direction of the receding Crown Victoria. A light-colored car on Western Boulevard appeared in the camera's view and stopped slightly behind the individual, who ran back to the car and climbed into the back passenger seat. At trial, both Rojas and Pineda viewed the BP video and identified defendant as the man in the video firing a gun.

Chicago Police Officers John Sego and Michael Alaniz testified that they were in plain clothes in an unmarked police car, a blue Crown Victoria, in the early morning hours of March 10, 2011. Alaniz was driving. At about 4 a.m., the police car was traveling north on Western Boulevard where gas stations were located on the northeast (BP) and southeast (BZ) corners. While driving through the intersection of Western and 47th Street, the officers heard a loud bang and

Sego felt a thump hitting his front passenger seat door. Sego asked Alaniz, 'What is that?' and Alaniz replied, 'I think a gun shot.' Alaniz looked in the rearview mirror and saw somebody holding a firearm and shooting at the police vehicle. Over his shoulder, Sego also saw the individual, who was about 50 feet away standing on the southeast corner of the intersection. The individual fired another shot. A short distance past the intersection, Alaniz made a U-turn on Western Boulevard to face southbound. At that point the individual fired once more, and Alaniz radioed for help. Alaniz stopped the police car, Sego got out, raised his gun, and said, 'Police.' A tan four-door sedan pulled up to the shooter, who climbed into the back passenger side of that vehicle. Sego re-entered the unmarked police car and Alaniz employed its emergency equipment: flashing turn signals and a siren. The tan car drove north approaching the police car, which began to move southbound. The two vehicles were driving slowly in adjacent lanes, about 5 to 10 feet apart, when the tan car slowed down and began to cross the center line. Alaniz swerved to avoid a collision, stuck his 9-millimeter firearm out the police car window, and shot three rounds at the tan car, which went back into its lane and continued northbound, picking up speed. Alaniz made another U-turn into the northbound lanes to chase after the tan car. The rear passenger door of the tan car opened, and a hand came out and slid a gun across the street. Alaniz transmitted a flash radio message that the offenders had just 'pitched a pistol' at 4600 South Western.

The chase continued to 43rd Street, where the tan car turned eastbound, and the police car followed. The tan car struck a parked van a few blocks east on 43rd

Street. The driver (Rollins) and the rear-seat passenger (defendant) exited the vehicle, ran east on 43rd Street, and were apprehended by police officers from an assisting unit.

Another police officer, who overheard Alaniz's radio message of a gun thrown out the window, went to the indicated location and recovered the gun, a Cobra semi-automatic .380 caliber pistol, and a magazine; they were lying in the street near 46th Street. Police forensic investigators went to 47th and Western Boulevard. At the southeast corner of the intersection they recovered three .380 caliber cartridge cases in the driveway and one .380 caliber live cartridge on the sidewalk corner. They recovered three 9-millimeter shell cases on the west side of Western Boulevard across the street and a little bit north of the BP gas station. The forensic investigators went to 1827 West 43rd Street where they observed Alaniz and Sego's blue unmarked police vehicle. At trial, photographs of Rojas's tan Mercury and the Crown Victoria police car were introduced. The police car photographs depicted the vehicle with 'M' plates and disclosed a bullet hole in the front passenger door. Rojas's Mercury had extensive damage to the front of the car and an apparent gunshot hole in the front driver's side wheel well area. The investigators also found a live unfired .380 caliber cartridge on the back seat of the Mercury behind the front passenger's seat." *People v. Davis*, 2016 IL App (1st) 140302-U, ¶¶ 4-10.

¶ 5    The parties stipulated that defendant had prior convictions for unlawful use of a weapon by a felon and aggravated unlawful use of a weapon. After the State rested, defendant moved for a directed finding, which the trial court denied.

¶ 6    The trial court then admonished defendant about his right to remain silent. After a discussion with the trial court, defendant rested without testifying. The trial court subsequently found defendant not guilty of attempted first degree murder, but found defendant guilty of being an armed habitual criminal, unlawful use of a weapon by a felon, and aggravated discharge of a firearm. The court later vacated the guilty findings on the armed habitual criminal count and the unlawful use of a weapon by a felon based on the Illinois Supreme Court's holding in *People v. Aguilar*, 2013 IL 112116.

¶ 7    At the sentencing hearing, the court announced it had read the presentence investigation (PSI) report. Defense counsel's argument in mitigation included the representation that defendant had two small children whom he was supporting and a job delivering phone books. The court noted that it did not consider defendant's prior convictions in determining the sentence. The court then sentenced defendant to a term of 14 years for the aggravated discharge of a firearm conviction, for which defendant must serve 85 percent.

¶ 8    On direct appeal, defendant did not challenge his conviction, but argued that the trial court abused its discretion in imposing defendant's sentence. Specifically, defendant asserted that "the trial court improperly considered a factor implicit in the charged offense as a factor in aggravation, and also erroneously disregarded a factor in mitigation (hardship of imprisonment on dependents)." *Davis*, 2016 IL App (1st) 140302-U, ¶ 17. This court affirmed defendant's sentence on appeal. *Id*. ¶ 31. In affirming defendant's sentence, we found no abuse of discretion where the trial court "properly considered factors in mitigation and aggravation of sentence and the sentence imposed was less than the maximum sentence allowable." *Id*.

¶ 9    On August 24, 2016, defendant filed his *pro se* postconviction petition in the trial court. In his petition, defendant argued that the State committed prosecutorial misconduct by

withholding exculpatory evidence from the defense, *i.e.*, that Rojas was given a plea deal in exchange for her testimony implicating defendant. Defendant also raised multiple claims of ineffective assistance of trial counsel: (1) trial counsel failed to review the State's discovery materials with defendant or consult with defendant; (2) trial counsel failed to do any pretrial investigation into possible sources of evidence favorable to the defense; (3) trial counsel failed to file a motion to suppress Pineda's photo lineup identification of defendant; (4) trial counsel failed to file a motion to suppress the recovered firearm due to an incomplete chain of custody; (5) trial counsel failed to file a motion to suppress the .380 shell casings; (6) trial counsel failed to file a motion to sever his trial from codefendant Rollins; (7) trial counsel failed to engage in plea negotiations with the State; (8) trial counsel failed to communicate a plea offer from the State to defendant; (9) trial counsel failed to impeach and properly cross-examine Rojas; (10) trial counsel's "improper, unethical and illegal actions" prohibited defendant from his right to testify at trial; and (11) trial counsel failed to adequately prepare for the sentencing hearing. Defendant further argued that his appellate counsel was ineffective for failing to raise these issues on direct appeal. Defendant attached his own affidavit as support to the petition in which he stated that he "most likely would have taken [the plea offer] to avoid going to trial."

¶ 10    On September 9, 2016, the trial court summarily dismissed defendant's postconviction petition as frivolous and patently without merit.

¶ 11    This appeal followed.

¶ 12    The Illinois Post-Conviction Hearing Act (Post-Conviction Act) (725 ILCS 5/122-1 through 122-8 (West 2012)) provides a tool by which those under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both.  725 ILCS 5/122-1(a) (West

2012); *People v. Coleman*, 183 Ill. 2d 366, 378-79 (1998). Postconviction relief is limited to constitutional deprivations that occurred at the original trial. *Coleman*, 183 Ill. 2d at 380. "A proceeding brought under the [Post-Conviction Act] is not an appeal of a defendant's underlying judgment. Rather, it is a collateral attack on the judgment." *People v. Evans*, 186 Ill. 2d 83, 89 (1999). "The purpose of [a postconviction] proceeding is to allow inquiry into constitutional issues relating to the conviction or sentence that were not, and could not have been, determined on direct appeal." *People v. Barrow*, 195 Ill. 2d 506, 519 (2001). Thus, *res judicata* bars consideration of issues that were raised and decided on direct appeal, and issues that could have been presented on direct appeal, but were not, are considered forfeited. *People v. Blair*, 215 Ill. 2d 427, 443-47 (2005).

¶ 13    At the first stage, the circuit court must independently review the postconviction petition within 90 days of its filing and determine whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2012). A petition is frivolous or patently without merit only if it has no arguable basis in law or fact. *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). A petition lacks an arguable basis in law or fact if it is "based on an indisputably meritless legal theory," such as one that is "completely contradicted by the record," or "a fanciful factual allegation," including "those which are fantastic or delusional." *Hodges*, 234 Ill. 2d at 16-17.

¶ 14    If the court determines that the petition is either frivolous or patently without merit, the court must dismiss the petition in a written order. 725 ILCS 5/122-2.1(a)(2) (West 2012). At the dismissal stage of a postconviction proceeding, the trial court is concerned merely with determining whether the petition's allegations sufficiently demonstrate a constitutional infirmity that would necessitate relief under the Act. *Coleman*, 183 Ill. 2d at 380. At this stage, the circuit court is not permitted to engage in any fact-finding or credibility determinations, as all

well-pleaded facts that are not positively rebutted by the original trial record are to be taken as true. *Coleman*, 183 Ill. 2d at 385. "If a single claim in a multiple-claim postconviction petition survives the summary dismissal stage of proceedings under the Post-Conviction Hearing Act, then the entire petition must be docketed for second-stage proceedings regardless of the merits of the remaining claims in the petition." *People v. Romero*, 2015 IL App (1st) 140205, ¶ 27 (citing *People v. Rivera*, 198 Ill. 2d 364, 371 (2001)).

¶ 15     On appeal, defendant argues that the trial court erred in dismissing his postconviction petition because he presented the gist of a meritorious claim of a *Brady* violation by the State as well as ineffective assistance of counsel. Defendant has abandoned several of the claims of ineffective assistance raised in his petition, but contends before this court that his trial counsel was ineffective for (1) failing to advise defendant of a plea offer from the State; (2) coercing defendant to waive his right to testify; (3) failing to investigate whether the State agreed not to charge a witness in exchange for her trial testimony; and (4) failing to present mitigating evidence during sentencing. We need only consider defendant's first claim of ineffective assistance of counsel because we find it dispositive of the appeal.

¶ 16     Claims of ineffective assistance of counsel are resolved under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  In *Strickland*, the Supreme Court delineated a two-part test to use when evaluating whether a defendant was denied the effective assistance of counsel in violation of the sixth amendment. Under *Strickland*, a defendant must demonstrate that counsel's performance was deficient and that such deficient performance substantially prejudiced defendant.  *Strickland*, 466 U.S. at 687. To demonstrate performance deficiency, a defendant must establish that counsel's performance fell below an objective standard of reasonableness.  *People v. Edwards*, 195 Ill. 2d 142, 163 (2001). "A defendant is entitled to

reasonable, not perfect, representation, and mistakes in strategy or in judgment do not, of themselves, render the representation incompetent." *People v. Fuller*, 205 Ill. 2d 308, 331 (2002). "Counsel's strategic choices are virtually unchallengeable. Thus, the fact that another attorney might have pursued a different strategy, or that the strategy chosen by counsel has ultimately proved unsuccessful, does not establish a denial of the effective assistance of counsel." *Id.*

¶ 17    In evaluating sufficient prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  If a case may be disposed of on the ground of lack of sufficient prejudice, that course should be taken, and the court need not ever consider the quality of the attorney's performance.  *Strickland*, 466 U.S. at 697. "*Strickland* requires actual prejudice be shown, not mere speculation as to prejudice." *People v. Bew*, 228 Ill. 2d 122, 135 (2008).

¶ 18    At the first stage of postconviction proceedings, a petition alleging ineffective assistance of counsel may not be dismissed if: (1) counsel's performance arguably fell below an objective standard of reasonableness; and (2) the petitioner was arguably prejudiced as a result.  *Hodges*, 234 Ill. 2d at 17.

¶ 19    Defendant first contends that his attorney was ineffective for failing to inform him of a plea offer from the State. Defendant points to the trial record in which the State informed the court that it was revoking a plea offer. Specifically, defendant points to his trial counsel's statement at a September 2012 pretrial hearing informing the court of a possible "negotiated disposition" in the case. Later, prior to trial in March 2013, the prosecutor stated, "I am revoking the offers. I'm ready to set it for trial." The trial court inquired if the offers involved defendant or

codefendant Rollins, and the prosecutor responded, "I think there were offers. I'm revoking them at this time." Defense counsel was not present at that hearing, and no objection was raised by defendant *pro se*. Defendant asserts in his affidavit attached to his postconviction petition that "at no time during the approximately three years that [he] was awaiting trial did trial counsel *** ever mention to [him] that the State had offered a plea in exchange for a guilty plea" and he "most likely would have taken it to avoid going to trial."

¶ 20     "A defendant has the right to decide whether to plead guilty." *People v. Trujillo*, 2012 IL App (1st) 103212, ¶ 9 (citing *People v. Whitfield*, 40 Ill. 2d 308, 311 (1968)). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). The "right to effective assistance of counsel extends to the decision to reject a plea offer, even if the defendant subsequently receives a fair trial." *People v. Hale*, 2013 IL 113140, ¶16; see also *Lafler v. Cooper*, 566 U.S. 156, 166 (2012) ("Even if the trial itself is free from constitutional flaw, the defendant who goes to trial instead of taking a more favorable plea may be prejudiced from either a conviction on more serious counts or the imposition of a more severe sentence.")

¶ 21     Here, defendant alleged in his postconviction petition that his attorney failed to inform him of a plea offer from the State. This is not an indisputably meritless theory, as these allegations are not completely contradicted by the record. See *Hodges*, 234 Ill.2d at 16. As stated above, the prosecutor stated on the record that all offers were revoked. Further, at this stage of postconviction proceedings, we are to take defendant's well-pled statements that counsel never communicated an offer to him as true. Under these circumstances, defendant has set forth an arguable claim that his trial counsel was deficient.

¶ 22    Turning to prejudice, defendant asserted in his affidavit that he would have accepted the plea offer to avoid a trial. In *Hale*, the Illinois Supreme Court adopted the prejudice requirements set forth by the United States Supreme Court in *Frye* and *Cooper*.

> "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability that the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." (Emphasis omitted.) *Hale*, 2013 IL 113140, ¶ 19 (quoting *Frye*, 566 U.S. at 147). See also *Cooper*, 566 U.S. at 164.

¶ 23    The *Hale* court further observed that "in order to establish the prejudice prong of *Strickland*, a defendant must show that he would have accepted the State's plea offer had counsel's performance not been deficient. Absent defendant's demonstration of this factor, prejudice cannot be proven and there is no need to address the additional factors set forth in *Frye*." *Id.* ¶ 21. The State relies on *Hale* to argue that defendant had failed to show how he was arguably prejudiced.

¶ 24    However, *Hale* did not involve the summary dismissal of a postconviction petition, but rather a direct appeal following an evidentiary hearing on the defendant's *pro se* posttrial claim

of ineffective assistance of trial counsel. Specifically, the defendant alleged that his trial counsel had failed to inform him that he was facing consecutive sentences which would have impacted his decision to reject a plea offer from the State. *Hale*, 2013 113140, ¶¶ 10-11. The trial court rejected the defendant's claim for ineffective assistance, but the appellate court found the attorney was ineffective under *Strickland*. *Id*. ¶ 13.

¶ 25    The supreme court reversed the appellate court and concluded that the defendant failed to satisfy the prejudice prong under *Strickland*. *Hale*, 2013 IL 113140, ¶ 30. The court observed that "the only evidence defendant offered regarding why [the defendant] chose not to plead guilty was his own self-serving testimony." *Id*. ¶ 24. The court found "no additional evidence substantiating [the] defendant's claim of prejudice." *Id*. ¶ 25. On the contrary, the *Hale* court found that "testimony from both defendant and [his attorney], combined with the evidence of defendant's persistent belief in the possibility of acquittal at trial, compels us to conclude that defendant's rejection of the proffered plea was not based upon counsel's alleged erroneous advice but, as the State suggests, upon other considerations." *Id*. ¶ 29. The *Hale* court further found that the testimony established that the "defendant was willing to risk a 30-year sentence and go to trial, rather than plead guilty in exchange for a 15-year sentence." *Id*. ¶ 28. The court concluded that "rather than providing any independent, objective confirmation that defendant's rejection of the proffered plea was based upon counsel's erroneous advice [citation] defendant's sole, self-serving claim that he otherwise would have been 'inclined' to accept the State's plea offer is unsupported, denied by counsel and refuted by the record." *Id*. ¶ 30.

¶ 26    Significantly, *Hale* was considered under a different procedural posture and is, thus, distinguishable from the present case where the defendant in that case had a greater burden at an evidentiary hearing than defendant here. There, the court rejected the defendant's claim after it

14

considered testimony from the evidentiary hearing as well as the record which disputed the defendant's claim that he would have accepted a plea bargain. Additionally, the defendant in *Hale* claimed that he received inaccurate advice regarding sentencing from his trial counsel which led the defendant to reject a plea offer, not that counsel failed to inform him of a plea offer. Here, following summary dismissal, we have no additional evidence with which to review defendant's claim. As previously discussed, to survive summary dismissal, defendant is only required to set forth an arguable claim of ineffective assistance of counsel. *Hodges*, 234 Ill. 2d at 10. "[A] defendant need only present a limited amount of detail in the petition." *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996).

¶ 27    In this case, the State focuses on defendant's affidavit in which he stated that he "most likely would have taken [the plea offer] to avoid going to trial" as insufficient to survive summary dismissal. However, in addition to that statement, defendant's affidavit, which is taken as true at this stage, stated that his trial counsel never informed him of a plea offer from the State. Defendant argues in his reply brief that it is unlikely that a similarly situated defendant would be able to establish arguable prejudice based on an attorney's failure to convey an offer because the defendant would be unable to provide information about the nondisclosed plea offer in his petition without an affidavit from the trial counsel. "Failure to attach independent corroborating documentation or explain its absence may, nonetheless, be excused where the petition contains facts sufficient to infer that the only affidavit the defendant could have furnished, other than his own sworn statement, was that of his attorney." *People v. Hall,* 217 Ill. 2d 324, 333 (2005). The " 'difficulty or impossibility of obtaining such an affidavit is self-apparent.' " *Id*. at 333-34 (quoting *People v. Williams,* 47 Ill. 2d 1, 4 (1970)). Such a situation is apparent in this case where the only affidavit to counter defendant's affidavit would be that of his

15

trial attorney. "Where defendants are acting *pro se*, courts should review their petitions 'with a lenient eye, allowing borderline cases to proceed.' " *Hodges*, 234 Ill. 2d at 21 (quoting *Williams v. Kullman*, 722 F.2d 1048, 1050 (1983)).

¶ 28    Under the circumstances of this case, we find that defendant has sufficiently shown that he was arguably prejudiced. Defendant's petition and supporting affidavit set forth a reasonable probability that defendant would have accepted the State's plea offer if his attorney had informed him of the offer. See *Hale*, 2013 IL 113140, ¶ 18. Taking defendant's statements as true at this stage of proceedings, the only basis to have caused defendant not to accept the State's offer is the fact that defendant was not informed of the offer. The record does not refute defendant's allegations. Further, we have no reason to believe that there is not a reasonable probability that the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it had defendant been informed of and accepted the State's offer. The record established that the prosecutor revoked the plea offers shortly before trial and defense counsel was not present. We also observe that following the bench trial, the court found defendant not guilty of the most serious offense, attempted murder. Based on the record before us and the low threshold of a first stage postconviction review, we find that defendant has demonstrated an arguable claim that trial counsel's performance fell below an objective standard of reasonableness and that defendant was prejudiced by trial counsel's deficient performance. Thus, the trial court erred in summarily dismissing defendant's petition as frivolous and patently without merit.

¶ 29    We need not address defendant's additional claims because partial dismissals are not permitted at the summary dismissal stage. See *Rivera*, 198 Ill. 2d at 374. We have no opinion as to whether defendant's claims are sufficient to pass second-stage postconviction review.

¶ 30    Based on the foregoing reasons, we reverse the summary dismissal of defendant's

postconviction petition and remand for second stage proceedings.

¶ 31    Reversed and remanded.